And our last case of the day is N. Ray Morley P. Thompson, Wirum v. Great American Life Insurance Co., Company. Good morning, Your Honor. If it pleases the Court, my name is Philip Worden. I'm with Pillsbury Winthrop Shaw Pittman. I'm here on behalf of the trustee in bankruptcy of the estate of Thompson, Andrea Wirum, who's the trustee, has accompanied me this morning. The appeal today is an appeal from a summary judgment. And the the summary judgment, we think, was improperly predicated upon an Ohio judgment, which we think is not relevant and is simply wrong. The rights that the trustee seeks to advance here, Your Honor, occur in Title XI, of course, of the Bankruptcy Code, which provides that upon the initiation of a case under Title XI that there's an estate consisting of all property either legal or equitable. And more importantly, it's further provided that any interest in property that the estate acquires after the commencement of the case is property of the estate, something that is acquired. Well, the property rights here we refer to in shorthand as the five and five, meaning that the debtor, and now the trustee, whose name was Morley Thompson, could on an annual basis, once every January, if he were alive on December 31st, he could invade the corpus of this trust and, in effect, take money out for himself and deny it to the beneficiaries, his children and the other beneficiaries of the will, the estate of his ex-wife. We all admit, and counsel admits, the insurance company admits, that if that right is not that election, that invasion of the corpus doesn't occur, the money's forever lost. So it's not automatic. It's not a pervasive lien. The Ohio court said, I think inexplicably, and I think quite wrongfully, it said the right was, quote, like money in the bank. Your Honor, if any of us have money in the bank, we don't have to get it out every year for it to continue to be ours. And if we die, it still belongs to our estate. That's not the case here. This is an election, and it's non-cumulative. Everybody agrees, non-cumulative, contingent, qualified, and conditional. That, I think, is precisely what the Bankruptcy Code contemplates. And we've located, Your Honor, from the Supreme Court of Ohio a case that wasn't available when the insurance company, it's called the Great American Life Insurance Company, obtained a judgment. Let me stop right there and talk about the judgment. The debtor, Morley Thompson, was defaulted in that case. The trustee, of course, had no role whatsoever. Counsel's brief says that, well, there's issue preclusion. And I stop right there and say, how can that be? The debtor was defaulted. It went to an Ohio court of appeal, didn't it? That is correct. After the trial judgment ruled, the litigants, Your Honor, were the trust itself, and they were litigating some other issue. They, of course, had they did not have the interest of there's $50 million in creditors in this estate. And that's what I'm here seeking to obtain some kind of recovery for. I guess what I'm getting at is how it got up to the court of appeal. It's a default. Somebody come in and ---- There were two other parties. There was the trust and the life insurance company and the debtor. And the debtor was defaulted, Your Honor. And then so that it could proceed, this is, I think, very important, and it's in tabs 24 and 25 in the record. What the life insurance company told the bankruptcy court was not to worry. There will be no prejudice. I think their words were, in fact, the estate will be benefited. Why am I here today? We've been prejudiced. I've been denied the right that the trustee exercises each year since she's been appointed. She was appointed in, I think, 06. The case was filed in 04. She's been denied that she's being denied the right to recover this one, this annual election to invade the corpus for the benefit of creditors. So we're being exceedingly prejudiced. So those statements to the court that were the predicate for obtaining relief from state before we got into the case. So coming back to issue preclusion, different parties, different issues, went by default. I'm the trustee. I'm a third party. My client is the third party fiduciary. We're not, our interests were not aligned with the debtor. And after all, he was defaulted. So I think that's improper. It's sympathetic as it might be to the argument, but carry out the logic. It would mean that you as the trustee would have standing, okay, to question every state law ruling on property interests. At some point, if you thought, you know, in any case, that the state court made an erroneous ruling because it prejudiced the trustee. Your Honor, I don't think we need to question it because I don't think it spoke to the issue. Nobody can contend that the Ohio court dealt with Title XI. And I agree with that. But the logic of your argument is because you're never a party prior to bankruptcy, you know, in any adjudication about property rights, in any case. And unfortunately, the trustee has to heed it to people about it, you know, even though it may, as you make an eloquent argument about the fact that, you know, he still has to ask for the money. But the Ohio court said it's money in the bank. But, Your Honor, remember, he came in. Remember the way the automatic stay works in bankruptcy. You can't prejudice, you can't prejudice the rights of creditors or the trustee without getting relief from the automatic stay. Section 362A of the Bankruptcy Act. The creditors' lien went into effect. That was pre-filing of the bankruptcy. So there was no automatic stay. When the default was taken, it was pre-bankruptcy. When the appeal was going up, it was post-petition. And so it was in the creditors' bill, though, was pre-petition. The creditors' bill was pre-petition. That is correct. But the creditors' bill, Your Honor, I would like to reserve just two minutes. We have plenty of time. I want to say this about the creditors' bill. We located and cite and discussed extensively the Mason case, which is a case after the Ohio Court of Appeals rules that talks about vesting. When do rights vest? Are they still contingent? So here's our point. If you've got a right to invade the corpus once a year, you can go and say, I want to take money away from my kids. I need the money. That's fine. I can get 5 percent. It's not automatic. It's not like an IRS lien. It's not like the cases cited by the insurance company that say, well, if you're getting disability because you're depressed or something of that sort, where you make a one-time election or the Orr case from the Fifth Circuit where Mr. Orr, once he was 30, he could get the entire amount. That's not the case. Are you saying that the Ohio court, by proceeding, violated the automatic stay? No, sir. No, sir. They did not. But what I'm saying is that in obtaining relief, what the insurance company, I think, is asking us to do or asking this panel to do is to reward a misrepresentation. And the misrepresentation was creditors won't be prejudiced. Why am I here? We've been prejudiced. The creditors will be prejudiced by what? By not having any money, Your Honor. By not being able to. By allowing the Ohio court proceedings to proceed, is that what you're saying? No, Your Honor. We're prejudiced because were we allowed to exercise our rights under the strong arm powers of the code and to contend, as we think is correct, that our rights, the right to invade the corpus, only arose on certain contingencies. They don't vest automatically. They're not fully vested pre-petition. And then we could get for every year that Mr. Thompson, who's 80-some years old, remains alive. So we could get, I think now, three years of this five and five election, $5,000 plus $5,000 of the corpus over several times. So that's, frankly, quite a bit of money. So that's what we're here seeking. Otherwise, the insurance company gets it all. And we say, and if you read the Mason case, which talks about vesting and about contingencies and rights remaining contingent. Okay. If it's contingent, that means you have to do something. And when you do something post-petition, then it's property of. Well, I guess what the Ohio court says, yes, you have to do something, but that something is wholly within the control of the debtor. Now, and that as a consequence, it can be taken. And that's that's the if I understand the Ohio court decision, it's that, look, this is an equitable right. Yes. To control money. And we can take it. What if he refused or what if Ms. Wireham said, I don't want to work for free. I refuse. And then we all agree the money's not cumulative. It's gone. So doesn't that mean that until such time as January rolls around and there's a written election and the trustee says, I want the money, it's not there. It's post-petition property. It's property that arose because of an interest in property. I'm reading from 541A7. Any interest in property that the estate acquires after the commencement. If they don't make the election, they don't acquire anything. It's unvested. This is somewhat off the point, but if the appeal occurred after, why didn't you, why didn't the trustee move to intervene in the. The trustee wasn't appointed. Your Honor, the way it worked is the case began as a Chapter 11. Right. And then it was in Chapter 11 for a couple of years and then the trustee. Got converted. Got converted and then she was appointed. And by then, you know, what I. The appeal was over. Right. I anticipated that Your Honors would ask, well, what would you do, Phil, Mr. Warden? And I would say, I'd go tell the Ohio court, gentlemen and ladies, it's not money in the bank. It's not automatic. The trustee and creditors seek some fair share. We seek equitable conduct. And, Your Honors, this proceeding should stop. I know. Because. You make a very good argument that Ohio got it wrong, but I don't know how we can overturn it. Well, but, but, but, Your Honor, if it's just on its face law, I mean, let's just start with the simplest proposition. It's not money in the bank. It's not money in the bank. If I have a trust that I can only access once a year and if I don't get it. I could even make a better argument for you in the sense that he might turn it down because he wanted to favor one group of creditors over another. You know, that's even a better argument. The trouble is, I think, we're still bound by Ohio, the Ohio adjudication. But the court of appeal that rendered that did it before the Mason case that talks about how it's contingent. And if something is contingent and non-vested, then. Yes, sir. Good morning, Your Honors. May it please the Court, a little bit under the weather, but Michael Shire of Keating, Meathing & Kleek Camp representing the creditor in this case, the Great American Life Insurance Company. First, let me say, we don't rely on, having argued, the words don't appear in our brief, that there's any issue, preclusion, matter in play before the Court. Judge Jastrowski specifically stated he wasn't relying on that concept and neither are we. This case presents a very, very standard analysis of the intersection and concepts in play where state law and bankruptcy doctrine come together to provide the rule of decision. If we take a step back a moment and get our arms around the concept of generally determining property rights in an asset once a debtor files bankruptcy, it will help clarify and focus us on the appropriate analysis, which is the analysis that both of the lower courts took in this case. The overriding, indisputable, controlling concept in play here is that federal courts look to state law to determine two things. One, the nature of a debtor's equitable or legal interest in property as of the petition date. And two, as this Court has written, state law controls the validity and effect of liens in the bankruptcy context as of the petition date, and that's the In Re Southern California Plastics case at 165 F-1243. So what is the state law principle in play here? Mr. Thompson, under Ohio state law, had an unconditional right, which matured in 1996 upon the death of his wife, to make a demand at the end of each year to withdraw $5,000 plus 5 percent of the corpus of the trust his wife left. The Ohio courts were clear that the right was unconditional under Ohio law. What does that mean? It simply means that the trustees of that trust under Ohio law had no discretion to deny payment of that distribution once it was requested. That's what unqualified means under Ohio law. And why was that so critical to the decision in the Ohio courts? Because if it was a conditional right, as Mr. Warden argues on behalf of the trustee, the Spendthrift Clause in that trust would have come into play, and it would have been an asset outside the reach of all creditors, including, ironically, Ms. Wyrum, the trustee. And Judge Jaslowski recognized the irony of the trustee's position in this case because were he to disregard Ohio law and find that this right to demand the payment was somehow conditional on being alive, on submitting a ministerial piece of form, then the Spendthrift Clause would exclude the distributions from the bankruptcy estate under Bankruptcy Code Section 541C2. So it's very, very important as a matter of both bankruptcy law and state law that we respect the decision of the Ohio court because so much hinges on it, but most importantly, it is a statement of Ohio law. So once we understand the nature of the equitable right in play here, we move to my client's interest in that right. We obtained a creditor's bill, not by default, after a week trial in front of Judge Martin in the Ohio courts. He issued that creditor's bill after a full evidentiary hearing, like I said, a week. And by our creditor's bill, we attached the debtor's equitable right to make the annual demand on the trustees who had then no discretion to withhold that distribution. And the Ohio courts held the effect of that creditor's bill lien was that we stood in a position senior to all other unsecured creditors of this debtor. And once bankruptcy takes — once the debtor filed bankruptcy, Ms. Wyrum could step into the shoes of unsecured creditors under the strong-run powers of Code Section 544. But unequivocal bankruptcy doctrine holds that she's going to take property rights as she gets them, as of the petition date. In this case, as the petition date, you had an equitable interest already — already encumbered by our creditor's bill lien. I'm a little confused. Sure. I thought it was by default. What hearing are you talking? What Mr. Warden is talking about is our underlying judgment against the debtor for $5.5 million. That was taken by default about — the default judgment was entered in November of 2002. We then a week later discovered he had no assets upon which to execute or actually knew that long before. And this is — this was a loan we had made to Mr. Thompson. We had gotten a default judgment on that because he didn't answer. The underlying judgment then was taken by default. We then obtained a creditor's bill after a week's trial before the court — It was on the other side of the creditor's trial. The Patricia Smith Thompson Trust. The other family, I guess. No, it was really the trustees, basically. And the point is, Mr. Thompson isn't stealing money from his children or depriving his children of money. His wife set the trust up. It's known, I think, for federal tax purposes as a Q-tip trust. And the idea was to defer a state income tax. Apparently he was ripping off a lot of people. Well, he was. He is — there's no doubt he's a bad man, and I think that's probably one of the few things we can agree on, that he's not the most honest of debtors and, in fact, has lost his discharge in this case. But that's beside the point. So we have our creditor's bill. We have the lien. When you take that snapshot as of the petition date, Ms. Wyrum is the trustee, takes all property and property rights as she gets them, unless it's avoidable as a preference. A lien, for example, is avoidable as a preference, a fraudulent conveyance. That was never an issue here. Never — an allegation was never made. It was not an avoidable lien. Who's making the annual elections right now? Right now it's both my client and — the Ohio law is our position. We step into the shoes of Mr. Thompson, and the trustees have agreed to allow us to make that election on his behalf. Mr. Thompson, however, has consistently sent in or mailed in, so to speak, his single line, which is in the record, his one-sentence demand on the trustees to make that distribution. And so they have it. It's currently in escrow. What if he didn't send in the one line? On the current state of play or theoretically? The current state of play. If he didn't elect to take the distribution, then would your client be getting any money? Yes. On the current state of play, we would. We're able to make that election on his behalf. Why are you able to make the election on his behalf? Two reasons. One, under Ohio law, we step into the shoes of the creditor by virtue of our creditor's bill. Two, the trustees have recognized our right to make that election. But I do understand your question. I really kind of want to give a more honest answer. And I think the issue Mr. Warden raises is let's put bankruptcy aside. His argument is in the context of this pre-petition right isn't really a right, that every time Mr. Thompson makes a demand, it's essentially a newly minted right. And because these newly minted rights come into play post-petition, they're post-petition assets that the trustee can grab and they're not subject to Arlene. That's just not the way the Ohio courts saw it, first of all. One, it's clear that if you read the Ohio court's opinion, Arlene is on the right to withdraw. Two, there's never been any explanation to this court, to the bankruptcy appellate panel, to Judge Jaslowski on the summary judgment motion, what the real relationship would be then between the right under the trust and will and the subsequent demands. The subsequent demands, that's the right that he, the right to make those demands are the right that attached and matured pre-petition in 1996 upon the death of Patricia Thompson. So if he, so that's the context in which Mr. Warden argues. And his point is, well, if Mr. Thompson doesn't take a distribution, he didn't assert the right. Well, the right preexisted. He just chose not to take the money. And it might be because he wants to keep the trust in better shape for his children. Well, then Arlene, there's no, then the lien, the proceeds of the pre-petition right, there are none. And so Arlene didn't attach to that because there's no proceeds for which, to which it could attach. But the only reason Arlene attached the proceeds is because the lien is actually on the right to make the demand. Now, to the extent he never asserts his right, I mean, I — It doesn't go to the estate either. It wouldn't go anywhere. It would stay in the trust. But that is not, that doesn't mean, there's, first of all, there's never been any citation of authority that each demand is a newly minted right. And that would be contrary to what the Ohio Court of Appeals found. So that's also an important point. So what about this Mason case? Yes, let me get to Mason. It said that it was equitable when it was still within the estate covered by the will, but it was legal afterwards, so it changed its character. And the acquirer's lien no longer applied, and the acquirer had to go by way of garnishment. I'm pleased that you asked about the case because I might have run out of time and not addressed it. Mason supports the Court of Appeals' decision here. The Ohio Supreme Court speaks through its syllabus, and I refer you to Rule 1B of the Ohio Supreme Court Rules for Reporting Opinions. The second paragraph of the Ohio Supreme Court's syllabus in Mason, and this is all that Mason stands for, is, A legatee's interest in an estate is equitable and attachable only by a creditor's bill until the appropriate court makes an order of distribution or until a fiduciary holds a definite amount ready to distribute to a legatee. After that point, the legatee's interest in the estate becomes an attachable legal interest subject to garnishment. All the Ohio Supreme Court did in Mason is really make us look good, me, my law firm look good in front of our client, because what they're saying is when an asset is equitable, there's only one execution procedure under Ohio law that applies. That is the creditor's bill procedure, which requires the filing of a complaint and an answer and a litigation in the ordinary course. Mason clarifies that we relied upon the correct procedure in order to obtain a lien on that equitable interest. It remains an equitable interest. It's never changed its nature. And the proceeds of that equitable interest now belong to us. Each time, the proceeds are distributed because they don't belong to the debtor now. Our lien attaches to them. If there was a sum of money that someone left Mr. Thompson, then we would have had a file of garnishment action under Ohio law to execute. And the Ohio Supreme Court's Mason decision, it gives a really nice outline based on those facts of what happened. You had someone like Mr. Thompson, whose mother left him property, left him in a will he would be entitled to proceeds of the sale of real estate when and if it's ever sold. A law firm had a judgment against this debtor, came in and filed a garnishment. Second, his ex-wife came in and filed a creditor's bill on a judgment that had expired under Ohio law. Then after the property was actually sold, a third judgment creditor came in and filed a garnishment. The Ohio court held as follows. Hold on. Law firm, you don't have priority because you filed a garnishment when the debtor only had an equitable interest. So that was in effect, that lien didn't attach. Wife, your creditor's bill didn't attach, even though it was the right procedure because you didn't have an enforceable judgment in Ohio to base your creditor's bill on. And this third creditor is the only one who got it right because at the time that they executed on their judgment, there already were proceeds to distribute. There was no longer an equitable interest in play. It was over. It's a one-shot deal. The property was sold. The money was there. And so they garnished the money. Our case was more like what the law firm, what we did is what the law firm should have done in Mason, and that is we filed a creditor's bill because his interest in that estate in 1996 that we've attached is equitable. We're not attaching individual distributions. We have to go in court every year and file another creditor's bill and another creditor's bill and another creditor's bill. There is no indication that Ohio law requires us to do that. Well, but didn't you – isn't the argument a little bit undermined by the fact you're saying every year he's been writing this letter? I mean, why do you need it? Suppose he doesn't write and send this note in. What happens then? Just like if Mrs. Stinnett in that case didn't fill out his application post-petition for disability benefits, he wouldn't get them. But it doesn't in any way diminish his right to what Charlene attaches to receive the distribution. Would you have the right to get that money even if he didn't write in? Today we do. Because of the Ohio judgment. Correct. But even if we – and, again, I just want to be sure that there's never – there's no implication of misleading, which I would never do. Our right, our lien, never attached to specific distributions. It attached to that right. I understand. The distributions under 541A7 of the Bankruptcy Code are proceeds of that right, and that's why our lien attaches to them under Ohio law and now post-petition under the Bankruptcy Code. So the bottom line is when you take that snapshot as of the petition date, you have an equitable, unconditional right under Ohio law subject to a lien. That is the state of play on the petition date. So you want his letter? I don't want his – well, you know, it's – you know, unconditional is a term of art under Ohio law. It just means the trustee has no discretion not to distribute the money. You know, whether or not – the letter is not a legally significant distinction or event in Ohio law to condition the right. He always has that right. The letter is the execution of the right on which we have the lien. That's the concept here, and that's why it's equitable, and that's why we undertook the creditor's bill procedure under Ohio law. Well, by your reasoning, his annual letter is useless. It has no effect whatsoever. He doesn't own the right to elect. You got it in your creditor's bill. Correct. Now we do. And we could elect. You know, we could not assert our lien. That doesn't mean we don't have a lien, and maybe that's an analogy. We have a lien. Secured creditors don't necessarily have to execute on their liens. They necessarily don't have to go after the collateral, but that doesn't mean you don't have a lien. The concept here, again, the focus is when you look at the 1996 will and testament, it gave Mr. Thompson equitable interest in that estate, and under Ohio law, that's what we attached. The proceeds of that right are what's in play in this case, and that's how the high appeals court saw it without any contrary authority cited by the other side, and that's how the two lower courts saw it as well. When you think it through in terms of our lien, if a newly minted right occurred every time that he had to make a demand, the court of appeals decision is nonsensical, and it would require us again to go in every year and either seek a creditor's bill or after he made the demand, execute on it with a garnishment. But there's no indication in any of the lower court decisions, be they federal in this case or the Ohio court of appeals, that we needed to do that. It was clear. You mentioned the Spenforth trust. Well, maybe he'd have an interest in letting it go to the Spenforth trust since it might benefit somebody he wants to benefit. And you know what? If the Ohio court of appeals had held that it was a conditional right, because if under Ohio law the need to submit the one-sentence demand on the trustee saying, I'd like to take, I want this money, was a condition to the right, then they would have held as a matter of Ohio law, the Spenforth clause protected that asset from creditors. Now, the implications are far and wide to that finding in this case because that then means, as Judge Jaslowski pointed out, though that asset is not available to Ms. Wyram either, much less us. Your three minutes are over. Thank you so much. Thank you, and I appreciate you letting me go over a little bit. Thank you for considering our case, Your Honor. I think the Ohio judgment is tainted. Here's what the record reveals. In getting relief from the stay, the insurance company says that a ruling of the State court will not alter the liabilities faced by the debtor. That's what they're arguing. The liabilities are altered. They've altered the liabilities. They've gone in without us present, without us defending our rights, and now they're casting this back at us. And before we ignore Mason and I ---- I don't want to estoppel anything. You weren't party. But the people on the other side are essentially ---- they would be making the same argument. Why not? No, sir. I think that ---- I, of course, was not a party to that litigation. I know that. I think they were arguing about a spendthrift clause. In fact, they were arguing, as I understand it, contrary to the interests of creditors. They, of course, were representing the ultimate legatees of the trust, not the current creditors who borrowed vast amounts of money, Your Honor. And what would you have argued? I would have argued that it was not money in the bank. Okay. And that 11 U.S.C. was not before the Ohio court, and they should be cautious of making any ruling. And if the case had gone on long enough, I would have pointed it out. There's some very useful language in the Mason case that talks about as long as an estate remains unsettled, the property of the estate does not vest in or become the property of the legatee. So something has to occur postpetition. An election has to be made. And there's an automatic stay. I think we're making the election every year because 362 would deny until there's relief from the stay. The insurance company from coming in. But if we read Mason to say that even though a legatee may possess an expectancy, it's only contingent. I'm reading from from Headnote 22. Even though the legatee may possess an expectancy in the estate's assets, it's only contingent. So if it's contingent, that means you've got to do something for it to become non-contingent. You've got to make the election. You've got to be alive. And you've got to make the election. But his point is that you can't defeat the rights under the will, can you? And therefore, even if they were wrong, all it means if he doesn't elect that it would go into a spendthrift trust, which you wouldn't have any access. But once he filed bankruptcy, Your Honor, all of his rights passed to the trustee. And she, on behalf of Predator, seemed to be. I mean, all you do is I elect, okay, or I don't elect. If I don't elect, it goes into the spendthrift. Right. But we've made the election, Your Honor. And I think counsel would agree that it's either the life insurance company or the creditors prevail here. Well, they would be part of the creditors. They are part of the creditors. How much money are we talking about? There's $5,000 plus 5% of the market value of the trust each year. Yes, ma'am. So what's the market value of the trust? It's probably less now than it was then. Less now than it was three months ago. All right. What was it, December 31st in 2007? 5% these days is about $135,000. So it's going to take a long time to pay off that $5.8 million. We have other we're trying other ways. I think there's a million dollars in trust or more. Is there not? It's not an immaterial amount of money. For creditors of this estate, it gives them something. Thank you for your interest. Yes, sir. Thank you. Your Honor, if you have any questions about judicial stockholding or any representation to make the case for it, I would like a I don't know if you're considering an argument. It's fine. This argument has gone way over. So thank you very much, Counsel. And Wareham v. Great American Life Insurance Company will be submitted, and this Court will adjourn this session for today. Thank you. Thank you. All rise.
judges: Canby, Wardlaw, Trager